11-MC-0102

F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

DEC 20 2011

GREGORY C. LANGHAM
CLERK

Daniel Wadley (Utah State Bar No. 10358)
wadleyd@sec.gov
Thomas M. Melton (Utah State Bar No. 4999)
meltont@sec.gov
Attorneys for Plaintiff
Securities & Exchange Commission
15 West South Temple, Suite 1800
Salt Lake City, Utah 84101
Telephone: 801-524-5796
Facsimile: 801-524-5262

F I L E D
U.S. DISTRICT COURT

2011 DEC 15  P 12: 11

DISTRICT OF UTAH

I hereby certify that the annexed is a true and correct
copy of a document or an electronic docket entry on
file at the United States District court for the District
of Utah.
# of pages  25
Date: 12/15/2011
D. MARK JONES, Clerk
By:
Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) <br><br> PLAINTIFF, ) <br><br> v. ) <br><br> MANAGEMENT SOLUTIONS, INC., a Texas Corporation; WENDELL A. JACOBSON; and ALLEN R. JACOBSON, ) <br><br> DEFENDANTS. ) | [PROPOSED] ORDER APPOINTING RECEIVER, FREEZING ASSETS AND OTHER RELIEF <br><br> Case: 2:11-cv-01165 <br> Assigned To : Jenkins, Bruce S. <br> Assign. Date : 12/15/2011 <br> Description: Securities and Exchange Commission v. Management Solutions et al |

## ORDER APPOINTING RECEIVER

**WHEREAS** this matter has come before this Court upon motion of the Plaintiff U.S.

Securities and Exchange Commission ("SEC", "Commission" or "Plaintiff") to appoint a

receiver in the above-captioned action; and,

**WHEREAS** the Court finds that, based on the record in these proceedings, the

appointment of a receiver in this action is necessary and appropriate for the purposes of

marshaling and preserving all assets of Management Solutions, Inc., together with any related

entities owned, controlled, and/or under common control by or through Management Solutions,

Inc., including but not limited to those set forth in Exhibit A attached hereto, together with Parkwood Management Company, LLC and Starwood Management Company (collectively "Management Solutions, Inc."), and all assets of the individual defendants Wendell Jacobson and Allen Jacobson ("Receivership Assets"); and,

WHEREAS this Court has subject matter jurisdiction over this action and personal jurisdiction over the Defendants, and venue properly lies in this district.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.     This Court hereby takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of Management Solutions, Inc. (as defined herein), Wendell Jacobson and Allen Jacobson (collectively, the "Receivership Defendants").

2.     Until further Order of this Court, John A. Beckstead of Holland & Hart LLP is hereby appointed to serve without bond as receiver (the "Receiver") for the estates of the Receivership Defendants.

## I. Asset Freeze

3.     Except as otherwise specified herein, all Receivership Assets are frozen until further order of this Court. Accordingly, all persons and entities with direct or indirect control over any Receivership Assets, other than the Receiver, are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing such assets. This freeze shall include, but not be limited to, Receivership Assets that are on deposit with financial institutions such as banks, brokerage firms and mutual funds.

4.     Defendants Management Solutions, Inc., Wendell Jacobson and Allen Jacobson,

2

their agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of such Order by personal service, facsimile service, or otherwise, and each of them, hold and retain within their control, and otherwise prevent any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment, or other disposal of any assets, funds, or other properties (including money, real or personal property, securities, choses in action or property of any kind whatsoever) of Defendants Management Solutions, Inc., Wendell Jacobson and Allen Jacobson currently held by them or under their control, whether held in the name of Defendants Management Solutions, Inc., Wendell Jacobson and Allen Jacobson, or for their direct or indirect beneficial interest wherever situated, and directing each of the financial or brokerage institutions, debtors, and bailees, or any other person or entity holding such assets, funds, or other properties of Defendants Management Solutions, Inc., Wendell Jacobson and Allen Jacobson to hold or retain within their control and prohibit the withdrawal, removal, transfer, or other disposal of any such assets, funds, or other properties.

## II.  General Powers and Duties of Receiver

5.      The Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers and general and limited partners of the entity Receivership Defendants under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Fed.R.Civ.P. 66.

6.      The trustees, directors, officers, managers, employees, investment advisors, accountants, attorneys and other agents of the Receivership Defendants are hereby dismissed and the powers of any general partners, directors and/or managers are hereby suspended. Such

3

persons and entities shall have no authority with respect to the Receivership Defendants' operations or assets, except to the extent as may hereafter be expressly granted by the Receiver. The Receiver shall assume and control the operation of the Receivership Defendants and shall pursue and preserve all of their claims.

7. No person holding or claiming any position of any sort with any of the Receivership Defendants shall possess any authority to act by or on behalf of any of the Receivership Defendants.

8. Subject to the specific provisions in Sections III through XIV, below, the Receiver shall have the following general powers and duties:

A. To use reasonable efforts to determine the nature, location and value of all property interests of the Receivership Defendants, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Defendants own, possess, have a beneficial interest in, or control directly or indirectly ("Receivership Property" or, collectively, the "Receivership Estates");

B. To take custody, control and possession of all Receivership Property and records relevant thereto from the Receivership Defendants; to sue for and collect, recover, receive and take into possession from third parties all Receivership Property and records relevant thereto;

C. To manage, control, operate and maintain the Receivership Estates and hold in his possession, custody and control all Receivership Property, pending further Order of this Court;

D. To use Receivership Property for the benefit of the Receivership Estates, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

E. To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, trustees and agents of the Receivership Defendants;

F. To engage and employ persons in his discretion to assist him in carrying

out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders or auctioneers;

G.    To take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property;

H.    The Receiver is authorized to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure;

I.    To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver;

J.    To pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estates; and,

K.    To take such other action as may be approved by this Court.

## III.  Access to Information

9.    The individual Receivership Defendants and the past and/or present officers, directors, agents, managers, general and limited partners, trustees, attorneys,  accountants and employees of the entity Receivership Defendants, as well as those acting in their place, are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Defendants and/or all Receivership Property; such information shall include but not be limited to books, records, documents, accounts and all other instruments and papers.

10.    Within ten (10) days of the entry of this Order, the Receivership Defendants shall file with the Court and serve upon the Receiver and the Commission a sworn statement, listing: (a) the identity, location and estimated value of all Receivership Property; (b) all employees (and job titles thereof), other personnel, attorneys, accountants and any other agents or contractors of

the Receivership Defendants; and, (c) the names, addresses and amounts of claims of all known

creditors of the Receivership Defendants.

11.     Within thirty (30) days of the entry of this Order, the Receivership Defendants

shall file with the Court and serve upon the Receiver and the Commission a sworn statement and

accounting, with complete documentation, covering the period from January 1, 2008 to the

present:

A.      Of all Receivership Property, wherever located, held by or in the name of
the Receivership Defendants, or in which any of them, directly or
indirectly, has or had any beneficial interest, or over which any of them
maintained or maintains and/or exercised or exercises control, including,
but not limited to: (a) all securities, investments, funds, real estate,
automobiles, jewelry and other assets, stating the location of each; and (b)
any and all accounts, including all funds held in such accounts, with any
bank, brokerage or other financial institution held by, in the name of, or
for the benefit of any of them, directly or indirectly, or over which any of
them maintained or maintains and/or exercised or exercises any direct or
indirect control, or in which any of them had or has a direct or indirect
beneficial interest, including the account statements from each bank,
brokerage or other financial institution;

B.      Identifying every account at every bank, brokerage or other financial
institution: (a) over which Receivership Defendants have signatory
authority; and (b) opened by, in the name of, or for the benefit of, or used
by, the Receivership Defendants;

C.      Identifying all credit, bank, charge, debit or other deferred payment card
issued to or used by each Receivership Defendant, including but not
limited to the issuing institution, the card or account number(s), all
persons or entities to which a card was issued and/or with authority to use
a card, the balance of each account and/or card as of the most recent
billing statement, and all statements for the last twelve months;

D.      Of all assets received by any of them from any person or entity, including
the value, location, and disposition of any assets so received;

E.      Of all funds received by the Receivership Defendants, and each of them,
in any way related, directly or indirectly, to the conduct alleged in the
Commission's Complaint. The submission must clearly identify, among
other things, all investors, the securities they purchased, the date and
amount of their investments, and the current location of such funds;

G.      Of all expenditures exceeding $1,000 made by any of them, including those made on their behalf by any person or entity; and

H.      Of all transfers of assets made by any of them.

12.     Within thirty (30) days of the entry of this Order, the Receivership Defendants shall provide to the Receiver and the Commission copies of the Receivership Defendants' federal income tax returns for 2008-2011 with all relevant and necessary underlying documentation.

13.     The individual Receivership Defendants and the entity Receivership Defendants' past and/or present officers, directors, agents, attorneys, managers, shareholders, employees, accountants, debtors, creditors, managers and general and limited partners, and other appropriate persons or entities shall answer under oath to the Receiver all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the Receivership Defendants, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Defendants.  In the event that the Receiver deems it necessary to require the appearance of the aforementioned persons or entities, the Receiver shall make its discovery requests in accordance with the Federal Rules of Civil Procedure.

14.     To issue subpoenas to compel testimony of persons or production of records, consistent with the Federal Rules of Civil Procedure and applicable Local Rules, except for the provisions of Fed.R.Civ.P. 26(d)(1), concerning any subject matter within the powers and duties granted by this Order.

15.     The Receivership Defendants are required to assist the Receiver in fulfilling his duties and obligations.  As such, they must respond promptly and truthfully to all requests for information and documents from the Receiver.

7

## IV.  Access to Books, Records and Accounts

16.     The Receiver is authorized to take immediate possession of all assets, bank
accounts or other financial accounts, books and records and all other documents or instruments
relating to the Receivership Defendants.  All persons and entities having control, custody or
possession of any Receivership Property are hereby directed to turn such property over to the
Receiver.

17.     The Receivership Defendants, as well as their agents, servants, employees,
attorneys, any persons acting for or on behalf of the Receivership Defendants, and any persons
receiving notice of this Order by personal service, facsimile transmission or otherwise, having
possession of the property, business, books, records, accounts or assets of the Receivership
Defendants are hereby directed to deliver the same to the Receiver, his agents and/or employees.

18.     All banks, brokerage firms, financial institutions, and other persons or entities
which have possession, custody or control of any assets or funds held by, in the name of, or for
the benefit of, directly or indirectly, and of the Receivership Defendants that receive actual
notice of this Order by personal service, facsimile transmission or otherwise shall:

      A.    Not liquidate, transfer, sell, convey or otherwise transfer any assets,
securities, funds, or accounts in the name of or for the benefit of the
Receivership Defendants except upon instructions from the Receiver;

      B.    Not exercise any form of set-off, alleged set-off, lien, or any form of self-
help whatsoever, or refuse to transfer any funds or assets to the Receiver's
control without the permission of this Court;

      C.    Within five (5) business days of receipt of that notice, file with the Court
and serve on the Receiver and counsel for the Commission a certified
statement setting forth, with respect to each such account or other asset,
the balance in the account or description of the assets as of the close of
business on the date of receipt of the notice; and,

      D.    Cooperate expeditiously in providing information and transferring funds,
assets and accounts to the Receiver or at the direction of the Receiver.

8

## V. Access to Real and Personal Property

19.     The Receiver is authorized to take immediate possession of all personal property of the Receivership Defendants, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies and equipment.

20      The Receiver is authorized to take immediate possession of all real property of the Receivership Defendants, wherever located, including but not limited to all ownership and leasehold interests and fixtures.  Upon receiving actual notice of this Order by personal service, facsimile transmission or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing or erasing anything on such premises.

21.     In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the premises described above.  The Receiver shall have exclusive control of the keys.  The Receivership Defendants, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

22.     The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of the Receivership Defendants, and to inspect all mail opened prior

9

to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

23.     Upon the request of the Receiver, the United States Marshal Service, in any judicial district, is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody and control of, or identify the location of, any assets, records or other materials belonging to the Receivership Estate.

## VI. <u>Notice to Third Parties</u>

24.     The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers and general and limited partners of the Receivership Defendants, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

25.     All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Receivership Defendant shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the Receivership Defendant had received such payment.

26.     In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estates.  All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the SEC.

27.     The Receiver is authorized to instruct the United States Postmaster to hold and/or

reroute mail which is related, directly or indirectly, to the business, operations or activities of any of the Receivership Defendants (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Defendants. The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail. The Receivership Defendants shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. All personal mail of any individual Receivership Defendants, and/or any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mail box, depository, business or service, or mail courier or delivery service, hired, rented or used by the Receivership Defendants. The Receivership Defendants shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository or courier service.

28. Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to the Receivership Defendants shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

29. The Receiver is authorized to assert, prosecute and/or negotiate any claim under any insurance policy held by or issued on behalf of the Receivership Defendants, or their officers, directors, agents, employees or trustees, and to take any and all appropriate steps in connection with such policies.

## VII.  Injunction Against Interference with Receiver

30.     The Receivership Defendants and all persons receiving notice of this Order by

personal service, facsimile or otherwise, are hereby restrained and enjoined from directly or

indirectly taking any action or causing any action to be taken, without the express written

agreement of the Receiver, which would:

      A.    Interfere with the Receiver's efforts to take control, possession, or
management of any Receivership Property; such prohibited actions
include but are not limited to, using self-help or executing or issuing or
causing the execution or issuance of any court attachment, subpoena,
replevin, execution, or other process for the purpose of impounding or
taking possession of or interfering with or creating or enforcing a lien
upon any Receivership Property;

      B.    Hinder, obstruct or otherwise interfere with the Receiver in the
performance of his duties; such prohibited actions include but are not
limited to, concealing, destroying or altering records or information;

      C.    Dissipate or otherwise diminish the value of any Receivership Property;
such prohibited actions include but are not limited to, releasing claims or
disposing, transferring, exchanging, assigning or in any way conveying
any Receivership Property, enforcing judgments, assessments or claims
against any Receivership Property or any Receivership Defendant,
attempting to modify, cancel, terminate, call, extinguish, revoke or
accelerate (the due date), of any lease, loan, mortgage, indebtedness,
security agreement or other agreement executed by any Receivership
Defendant or which otherwise affects any Receivership Property; or,

      D.    Interfere with or harass the Receiver, or interfere in any manner with the
exclusive jurisdiction of this Court over the Receivership Estates.

31.     The Receivership Defendants shall cooperate with and assist the Receiver in the

performance of his duties.

32.     The Receiver shall promptly notify the Court and SEC counsel of any failure or

apparent failure of any person or entity to comply in any way with the terms of this Order.

## VIII.  Stay of Litigation

33.     As set forth in detail below, the following proceedings, excluding the instant

proceeding and all police or regulatory actions and actions of the Commission related to the above-captioned enforcement action, are stayed until further Order of this Court:

> All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever located; (c) any of the Receivership Defendants, including subsidiaries and partnerships; or, (d) any of the Receivership Defendants' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

34.   The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

35.   All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court.  Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Defendants against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

## IX.  Managing Assets

36.   For each of the Receivership Estates, the Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent Receivership Property (the "Receivership Funds").

37.   The Receiver's deposit account shall be entitled "Receiver's Account, Estate of Management Solutions, Inc." together with the name of the action.

38.   The Receiver may, without further Order of this Court, transfer, compromise, or

otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property.

39.    Subject to Paragraph 40, immediately below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estates, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property.

40.    Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estates.

41.    The Receiver is authorized to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Estates, including making legally required payments to creditors, employees, and agents of the Receivership Estates and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

42.    The Receiver shall take all necessary steps to enable the Receivership Funds to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations, when applicable, whether proposed, temporary or final, or pronouncements thereunder, including the filing of the elections and statements contemplated by those provisions. The Receiver shall be designated the administrator of the Settlement Fund, pursuant to Treas. Reg. § 1.468B-2(k)(3)(i), and shall satisfy the

administrative requirements imposed by Treas. Reg. § 1.468B-2, including but not limited to (a) obtaining a taxpayer identification number, (b) timely filing applicable federal, state, and local tax returns and paying taxes reported thereon, and (c) satisfying any information, reporting or withholding requirements imposed on distributions from the Settlement Fund. The Receiver shall cause the Settlement Fund to pay taxes in a manner consistent with treatment of the Settlement Fund as a "Qualified Settlement Fund." The Receivership Defendants shall cooperate with the Receiver in fulfilling the Settlement Funds' obligations under Treas. Reg. § 1.468B-2.

## X. Investigate and Prosecute Claims

43.     Subject to the requirement, in Section VII above, that leave of this Court is required to resume or commence certain litigation, the Receiver is authorized, empowered and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may in his discretion, and in consultation with SEC counsel, be advisable or proper to recover and/or conserve Receivership Property.

44.     Subject to his obligation to expend receivership funds in a reasonable and cost-effective manner, the Receiver is authorized, empowered and directed to investigate the manner in which the financial and business affairs of the Receivership Defendants were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate; the Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from this Court as may be necessary to enforce this Order.

45.    The Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by all entity Receivership Defendants.

46.    The receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, his Retained Personnel (as that term is defined below), and the Receivership Estate.

## XII. Bankruptcy Filing

47.    The Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for the Receivership Defendants. If a Receivership Defendant is placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estates as, a debtor in possession. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity. Pursuant to Paragraph 5 above, the Receiver is vested with management authority for all entity Receivership Defendants and may therefore file and manage a Chapter 11 petition.

48.    The provisions of Section VIII above bar any person or entity, other than the Receiver, from placing any of the Receivership Defendants in bankruptcy proceedings.

## XII. Liability of Receiver

49.    Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

50.    The Receiver and his agents, acting within scope of such agency ("Retained Personnel") are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their

good faith compliance with their duties and responsibilities as Receiver or Retained Personnel nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

51. This Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

52. In the event the Receiver decides to resign, the Receiver shall first give written notice to the Commission's counsel of record and the Court of its intention, and the resignation shall not be effective until the Court appoints a successor. The Receiver shall then follow such instructions as the Court may provide.

## XIII. Recommendations and Reports

53. The Receiver is authorized, empowered and directed to develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Property (the "Liquidation Plan").

54. Within ninety (90) days of the entry date of this Order, the Receiver shall file the Liquidation Plan in the above-captioned action, with service copies to counsel of record.

55. Within thirty (30) days after the end of each calendar quarter, the Receiver shall file and serve a full report and accounting of each Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Property, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estates.

56. The Quarterly Status Report shall contain the following:

A. A summary of the operations of the Receiver;

17

B.   The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

C.   A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

D.   A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

E.   A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments);

F.   A list of all known creditors with their addresses and the amounts of their claims;

G.   The status of Creditor Claims Proceedings, after such proceedings have been commenced; and,

H.   The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

57.   On the request of the Commission, the Receiver shall provide the Commission with any documentation that the Commission deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the Commission's mission.

### XIV.   Fees, Expenses and Accountings

58.   Subject to Paragraphs 59 – 65 immediately below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership.  Further, prior Court approval is not required for payments of applicable federal, state or local taxes.

18

59.     Subject to Paragraph 60 immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order.  The Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

60.     The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver.  Such compensation shall require the prior approval of the Court.

61.     The Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estates (the "Fee Applications").  At least thirty (30) days prior to filing each Fee Application with the Court, the Receiver will serve upon counsel for the SEC a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by SEC staff.

62.     All Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership.  At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

63.     Each Fee Application shall:

A.     Comply with the terms of the Billing Instructions agreed to by the Receiver; and,

B.     Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any

19

agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

64.     At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by SEC staff, as well as the Receiver's final application for compensation and expense reimbursement.

IT IS SO ORDERED, this ___ day of _____, 2011.

_____
UNITED STATES DISTRICT JUDGE

20

# Exhibit A

2010

| LAST NAME OR COMPANY | RETURN TYPE |
|---|---|
| 80th South Partners, LLC | 1065 |
| AC Apartments Texas, Inc. | 1120 |
| AC Apartments Texas, LP | 1065 |
| Alson, LLC | 1065 |
| Apartments at Jefferson Chase, LLC | 1065 |
| Apartments at Lakes Ridge, LLC | 1065 |
| Ark Walk, LLC | 1065 |
| Autumn Hills, LLC | 1065 |
| Bailey, Jenny Jacobson & Greg | 1040 |
| Bare Smokey Trail | 1065 |
| Baruja, LLC | 1065 |
| Baytown Stonebrook Apartments, LTD | 1065 |
| Beeville Apartments, LLC | 1065 |
| Beleza Bay, LLC | 1065 |
| Bianca Winds, LLC | 1065 |
| BlueJay Apartments, LLC | 1065 |
| Boca Raton, LLC | 1065 |
| Boulder Development Co, LLC | 1065 |
| BPJ Investments, LLC | 1065 |
| Bradson, LLC | 1065 |
| Bridge Point Capital, LLC | 1065 |
| Brookhaven Apts LLC | 1065 |
| Brooklyn Crossing Ltd | 1065 |
| Brutace, LLC | 1065 |
| Build Value, LLC | 1065 |
| Business Pros, LLC | 1065 |
| BW Acquisitions, LLC | 1065 |
| Caddis Multifamily, LLC | 1065 |
| Caddis Partners | 1065 |
| Cala Seniors, LP | 1065 |
| Canterra Park | 1065 |
| Car Vala, LLC | 1065 |
| Castle Wyndsor Court Apartments, LLC | 1065 |
| Champion Capital, LLC | 1065 |
| Chelby Park LLC | 1065 |
| Circle J Farms, LTD | 1065 |
| Clear Creek 1, LLC | 1065 |
| Clear Creek 2, LLC | 1065 |
| Clear Paradigm, LLC | 1065 |
| Cleburne Terrace, Ltd | 1065 |
| Cletace, LLC | 1065 |
| Colonial Green, LLC | 1065 |
| Colonial Red, LLC | 1065 |
| Colonial Yellow, LLC | 1065 |
| Cooper Street Apts, LLC | 1065 |
| Costa Azul LLC | 1065 |
| Council 380 LLC | 1065 |
| Council Properties, LLC | 1065 |
| Council-Escena GP Inc. | 1120 |
| Court & Villa Inc. | 1120 |
| Courtyard Park I, LLC | 1065 |
| Courtyard Park II, LLC | 1065 |

| | |
|---|---|
| Courtyard Park, LLC | 1065 |
| Creekside @ Northlake Ltd | 1065 |
| D General, LLC | 1065 |
| Den Glen, LLC | 1065 |
| Den Town, LLC | 1065 |
| DeZavala Oaks, LLC | 1065 |
| Diamante Bruto, LLC | 1065 |
| Dimazio, LLC | 1065 |
| Discovery Grove, LLC | 1065 |
| Discovery Point II, LLC | 1065 |
| Discovery Point, LLC | 1065 |
| Dixie Winds, LLC | 1065 |
| Doah View, LLC | 1065 |
| Dynamic Integrations, LLC | 1065 |
| DZ Special, LLC | 1065 |
| Escena Park Apartments, LLC | 1065 |
| Escena Properties, LLC | 1065 |
| Falcon Head Properties LLC | 1065 |
| Fieldson, LLC | 1065 |
| Fountain Legacy, LLC | 1065 |
| Freds, Rick & Burg, LLC | 1065 |
| Gateway Properties, LLC | 1065 |
| Golden J, LLC | 1065 |
| Goodson, LLC | 1065 |
| Goose Brook, LLC | 1065 |
| Greater Fredericksburg Apts, LLC | 1065 |
| Group Wisa, LLC | 1065 |
| Haynes Property Management, LLC | 1065 |
| High Star Ranch, LLC | 1065 |
| Hondo Encinito Apartments, LLC | 1065 |
| HPI Investments, LLC | 1065 |
| Inverless LLC | 1065 |
| Iosepa Estates, LLC | 1065 |
| Iron Woods Estates, LLC | 1065 |
| Jacobson, Allen & Cami | 1040 |
| Jacobson, Gene & Larraine | 1040 |
| Jacobson, Wendell & Melba | 1040 |
| Jake & Mac, LP | 1065 |
| Jake & Tate Properties, LP | 1065 |
| Janison Investments LLC | 1065 |
| Jarustds | 1065 |
| Kamy Lakes, LLC | 1065 |
| King George Apt, LLC | 1065 |
| King Sage | 1120 |
| Kingson, LLC | 1065 |
| Komo Mai Estates, LLC | 1065 |
| Kula Estates, LLC | 1065 |
| Kulia I Ka Nuu Estates, LLC | 1065 |
| La Villita, LLC | 1065 |
| Lake Bury, LLC | 1065 |
| Lake Charlestonian, LLC | 1065 |
| Laka Gran, LLC | 1065 |
| Lake Hood, LLC | 1065 |
| Lakes Edge, LLC | 1065 |
| Lamp Son, LLC | 1065 |
| League Eleven, LLC | 1065 |
| League Three, LLC | 1065 |
| Lovell, Emily Jacobson & Brett | 1040 |
| Madison Chase Apartments TIC | 1065 |

| | |
|---|---|
| Management Masters LLC | 1065 |
| Management Solutions, Inc. | 1120 |
| Mandivo, LLC | 1065 |
| Marvista, LLC | 1065 |
| Mayo, LLC | 1065 |
| McKamy Lakes Associates, LTD | 1065 |
| Melson, LLC | 1065 |
| Memphis Park LLC | 1065 |
| Mid America Airpark at Falcon Head Resort | 1065 |
| Miraflores, Ltd | 1065 |
| Misterna Bay, LLC | 1065 |
| Monte Forte, LLC | 1065 |
| Monterra Park | 1065 |
| Motsarika Apts | 1065 |
| Mountain Enterprises, LLC | 1065 |
| Noallson, LLC | 1065 |
| North Bass, LLC | 1065 |
| North Spring Park LLC | 1065 |
| Oak City, LLC | 1065 |
| Parkwood Capital, LLC | 1065 |
| Patriot American, LLC | 1065 |
| Patriots' Dream, LLC | 1085 |
| Pebble Lakes, LLC | 1065 |
| Pepper Winds, LLC | 1066 |
| Perpetual, LLC | 1065 |
| Platinum Protection, LLC | 1065 |  and a 1120S done
| Plum Tree Partners, Ltd | 1065 |
| PNL Ventures LP | 1065 |
| Poca Tucson, LLC | 1065 |
| Provident Development Group, LLC | 1065 |
| Provident Point LLC | 1065 |
| Pryor Creek Apts, LLC | 1065 |
| QGS Investments LLC | 1065 |
| Quorum Properties LLC | 1065 |
| Red City, LLC | 1065 |
| REEP Investments, LLC | 1065 |
| Reese Road Apartments, LLC | 1065 |
| Reserve @ Abbie Lakes, LLC | 1065 |
| Retama Hill, LLC | 1065 |
| Retama Richards, LLC | 1065 |
| Retama Rose, LLC | 1065 |
| River Royal, LLC | 1065 |
| Rock Bridge Apartments, LLC | 1065 |
| Rock City LLC | 1065 |
| Rose Hill FDC, Ltd | 1065 |
| Rosons, LLC | 1065 |
| SA Townhomes, LTD | 1065 |
| Sagefield Duplexes LLC | 1066 |
| Sagewood Capital, LLC | 1065 |
| Sal Tucson, LLC | 1065 |
| San Marina, LLC | 1065 |
| Santana Springs, LLC | 1065 |
| Satina, LLC | 1065 |
| Shepards Pointe, LLC | 1065 |
| Sierra Plains, LLC | 1065 |
| Sky Park International, LLC | 1065 |
| Smoky Trail of Limon, LLC | 1065 |
| Snow Winds, LLC | 1066 |
| Socourt, LLC | 1065 |

| | |
|---|---|
| Solar Bridge, LLC | 1065 |
| Solar Sands, LLC | 1065 |
| South Bass, LLC | 1065 |
| Spring Financial, LLC | 1065 |
| Spring Gate, LLC | 1065 |
| Squaw Springs, Inc. | 1120 |
| Stone Brook Idaho, LLC | 1065 |
| Stonebrook at Goosecreek, LTD | 1065 |
| Summerwind, LLC | 1065 |
| Sun Winds, LLC | 1065 |
| Sunbury Ridge Apartments LLC | 1065 |
| Sunbury Ridge, Ltd. | 1065 |
| Sycamore Apts GP, LLC | 1065 |
| Sycamore Apts, LP | 1065 |
| Teach & Save, LLC | 1065 |
| Temple Winds, LLC | 1065 |
| Tennesee Park LLC | 1065 |
| Tetonian Properties, LLC | 1065 |
| The Falls at Town Crossing | 1065 |
| Thunder Bay Mortgage, Inc | 1120 |
| Top Choice Foods, LLC | 1065 |
| Tuscany Gardens, LLC | 1065 |
| Upper Muddy River, LLC | 1065 |
| V Austin Villas, LLC | 1065 |
| Valley View Residential, LLC | 1065 |
| Verano Park, LLC | 1065 |
| Villa Florence Development Co., LLC | 1065 |
| Villas Del Sur, LLC | 1065 |
| Vintage Place Management, Inc. | 1120 |
| Vintage Place, LLC | 1065 |
| Volente City, LLC | 1065 |
| Wakara Point, LLC | 1065 |
| Wells & Vala, LLC | 1065 |
| Willow Park, LLC | 1065 |
| Winkson, LLC | 1065 |
| Wolf Son, LLC | 1065 |
| Wool City, Inc. | 1120 |
| Wyndurt, LLC | 1065 |
| Yellow Rose, Inc. | 1120 |
| Zaca, LLC | 1065 |

Daniel Wadley (Utah State Bar No. 10358)
wadleyd@sec.gov
Thomas M. Melton (Utah State Bar No. 4999)
meltont@sec.gov
Attorneys for Plaintiff
Securities & Exchange Commission
15 West South Temple, Suite 1800
Salt Lake City, Utah 84101
Telephone: 801-524-5796
Facsimile: 801-524-5262

FILED
U.S. DISTRICT COURT

2011 DEC 15  A 9: 33

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | **COMPLAINT** |
| PLAINTIFF, |  |
| v. | Case: 2:11cv01165<br>Assigned To : Jenkins, Bruce S.<br>Assign. Date : 12/15/2011<br>Description: SEC v. Management<br>Solutions et al |
| MANAGEMENT SOLUTIONS, INC., a Texas Corporation; WENDELL A. JACOBSON; and ALLEN R. JACOBSON, |  |
| DEFENDANTS. |  |

Plaintiff, Securities and Exchange Commission (the "Commission"), for its Complaint

against Defendants Management Solutions, Inc., Wendell A. Jacobson, and Allen R. Jacobson

(collectively, "Defendants") alleges as follows:

## INTRODUCTION

1.      This matter involves an ongoing offering fraud and Ponzi scheme operated by

Wendell A. Jacobson ("Wendell Jacobson") and his son Allen R. Jacobson ("Allen Jacobson").

Operating from a base in Fountain Green, Utah, through a complex web of over 200 entities,

Wendell Jacobson and Allen Jacobson have raised more than $200 million from approximately

225 investors.  The Defendants have raised investment funds through material and pervasive

misrepresentations, and have operated the investment program as a wide-scale Ponzi scheme since at least January 1, 2008.

2.    Wendell and Allen Jacobson purport to offer investors the opportunity to invest in limited liability companies ("LLCs") that directly or indirectly own large, multi-unit apartment communities in eight states.  Wendell and Allen Jacobson represent to investors that they buy apartment complexes at significantly discounted prices with low occupancy rates, renovate them, improve their management, and eventually seek to sell them within five years.  This business is operated under the umbrella of Management Solutions, Inc. ("MSI"), which is wholly-owned by Wendell Jacobson.

3.    The Defendants make various representations to investors in the LLCs, for example, that their returns will be derived from the apartment complex in which they have invested and will not be commingled with other funds; that none of the Jacobsons, MSI, nor investors have ever lost money on a property; and that Wendell Jacobson or one of his wholly-owned entities always owns and has contributed at least 50% of the funding for each LLC. These representations to investors are false.

4.    Moreover, Defendants do not disclose to investors that the investor funds are immediately diverted to, and pooled in, one of several large bank accounts, most commonly in the account of Thunder Bay Mortgage Company ("Thunder Bay").  Each of the pooled accounts, including Thunder Bay, is wholly-owned by Wendell Jacobson.  After commingling and pooling new investor funds into these accounts, the Defendants then redirect the funds to pay operating expenses of the numerous entities and also to pay promised returns to earlier investors.

5.    Because investor funds in Thunder Bay and other accounts are pooled and used to pay returns to other investors, Defendants' operation is a classic Ponzi scheme.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction by authority of Sections 20 and 22 of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77t and 77v] and Sections 21 and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78u and 78aa].

7.      Defendants, directly and indirectly, singly and in concert, have made use of the means and instrumentalities of interstate commerce and the mails in connection with the transactions, acts and courses of business alleged herein, certain of which have occurred within the District of Utah.

8.      Venue for this action is proper in the District of Utah under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and under Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain of the transactions, acts, practices, and courses of business alleged in this Complaint took place in this district and because certain of the defendants reside in and transact business in this district.

9.      Defendants, unless restrained and enjoined by this Court, will continue to engage in the transactions, acts, practices, and course of business alleged herein and in transactions, acts, practices, and courses of business of similar purport and object.

10.     Defendants' conduct took place in connection with the offer, purchase and/or sale of membership interests in LLCs controlled by Wendell Jacobson.

## DEFENDANTS

11.     **Management Solutions, Inc.** ("MSI") is a Texas corporation with its principal place of business in Fountain Green, Utah.  It is wholly-owned by Wendell Jacobson.

3

12.   **Wendell A. Jacobson**, age 58, is the founder and controlling person of numerous entities that own and manage over 8,000 units in apartment complexes located in eight different states. He resides in Fountain Green, Utah.

13.   **Allen R. Jacobson**, age 33, is the son of Wendell Jacobson and has the designated responsibility to meet with and manage MSI's investor relations. He resides in Fountain Green, Utah.

## STATEMENT OF FACTS
### BACKGROUND

14.   For approximately 25 years, Wendell Jacobson has been in the business of purchasing, renovating, managing and reselling multi-unit apartment complexes.

15.   Wendell Jacobson's operation is conducted under the umbrella of MSI. MSI's stated goal is to identify multi-family apartment communities with low occupancy rates and, by rehabilitating them and improving their on-site management, increase their occupancy, their rent collections rate, and ultimately their resale value. MSI seeks to resell the apartment complexes at a substantial profit within three to five years.

16.   Wendell and Allen Jacobson solicit investors to invest in MSI's operation. Investors purchase membership interests in LLCs that, directly or indirectly, own particular apartment properties (collectively, the "Investor LLCs").

17.   Typically, Wendell Jacobson creates a new Investor LLC and bank account for each new investor or group of investors. Frequently, ownership is structured such that investors own membership interests in Investor LLCs that own interests in other LLCs.

18.   To date, Wendell Jacobson has formed over 200 Investor LLCs.

19.   Wendell Jacobson is the managing member of each Investor LLC and is the signatory on every bank account in the name of an Investor LLC.

20.     To date, Wendell and Allen Jacobson have sold LLC membership interests to approximately 225 investors, raising at least $200 million.

21.     Wendell and Allen Jacobson solicit investors personally and through word of mouth. Wendell Jacobson and Allen Jacobson both belong to the Church of Jesus Christ of Latter Day Saints ("LDS Church"), and appear to have used their membership and the connections arising therefrom to find and obtain the trust of prospective investors.

22.     Allen Jacobson also solicits investors by means of a Salt Lake City entity by the name of Caddis Partners, LLC ("Caddis"), of which he is a 50% owner. Caddis has created the Multi-Family Fund, a fund that invests solely in selected Investor LLCs, and appears to function as a means to aggregate smaller investments. To date it has raised approximately $1.5 million for MSI.

23.     Wendell Jacobson has also formed at least four entities of which he is the sole owner. The four entities are MSI, Thunder Bay, Squaw Springs and Council Properties (collectively, the "Jacobson-owned Entities"). The Defendants use the Jacobson-owned Entities to collect and pool the investor funds raised through the numerous Investor LLCs.

24.     Wendell Jacobson is the signatory on the bank account maintained in the name of each of the Jacobson-owned Entities.

25.     In order to invest, the Defendants form an Investor LLC and direct the investor to deposit by check or wire transfer cash into the newly-formed Investor LLC's bank account. The investment ostensibly provides the investor with a membership in the Investor LLC in proportion to his/her investment, and entitles the investor to a return at a promised rate, generally between 5-8% per year, paid monthly. The investor also generally executes an Operating Agreement with the Investor LLC.

26.     When investor funds are received by an Investor LLC, however, they are almost always immediately transferred to, and pooled in, an account belonging to one of the Jacobson-owned Entities, usually Thunder Bay.

27.     Funds maintained in the accounts of the Jacobson-owned Entities are used for a wide variety of purposes, including, operating needs of Investor LLCs; other expenses of the Jacobson-owned Entities and the Jacobson family; and payment of returns to investors in Investor LLCs.

28.     Defendants sold securities in the form of investment contracts.  No registration statement has been filed as to those securities.

29.     Wendell and Allen Jacobson are acting as unregistered brokers in connection with their offers and sales of membership interests in Investor LLCs.  They are doing so by actively and continuously soliciting investors and handling investor funds.

## REPRESENTATIONS TO INVESTORS

30.     Wendell and Allen Jacobson tell investors that their principal will be safe, that it will be used to acquire, rehabilitate, and manage certain identified properties, and that they will receive a return of between 5% and 8% a year, depending on the performance of the apartment complex in question.  They also tell investors that MSI's track record has been to achieve a return of 12% to 15% a year for investors, due to its expertise in renovating and managing apartment complexes.

31.     Wendell and Allen Jacobson tell investors that they can expect profits from two sources: first, from the operations of that particular piece of property in which their funds will be invested – *i.e.*, the rental income; and, second, from additional profit at the time the property is sold.

32.     Wendell and Allen Jacobson tell investors that investor funds designated for a particular LLC are not commingled with the funds of any other entity.

6

33.     Wendell Jacobson tells investors that he has never lost money on a property, except once—and that, on that occasion, he covered the loss personally so that investor returns would not be reduced.

34.     Wendell and Allen Jacobson also tell investors that at all times a Jacobson-owned entity will have an ownership interest of at least 50% in each Investor LLC, and that the Jacobson-owned Entity will contribute at least 50% of the funding to each Investor LLC. The Jacobsons further tell investors that investor returns are always paid first, and that the Jacobson-owned Entity takes the remaining amount, or covers any resulting loss. In this way investors are reassured that the Defendants' funds are always at risk along with theirs, and that the Defendants' funds protect the investors from any potential loss.

35.     Wendell and Allen Jacobson represent to investors, both face-to-face and in MSI's marketing materials, that MSI's operation is successful and presents an extremely desirable investment opportunity.

## THE REPRESENTATIONS MADE TO INVESTORS WERE FALSE

36.     Investor funds do not remain with the Investor LLC account into which they are originally paid. Instead, they are almost always immediately diverted to one of the collecting accounts, most commonly Thunder Bay, where they are commingled and then used for other purposes, including to pay returns to earlier investors. On occasion investor funds have also been pooled into accounts belonging to Squaw Springs, Inc. and Council Properties, LLC, both of which are 100% owned by Wendell Jacobson.

37.     The investor funds are never held and used exclusively to acquire, rehabilitate, and operate the subject property as represented.

7

38.     Because he is the signatory on all of the bank accounts maintained by the Investor LLCs and the Jacobson-owned Entities, Wendell Jacobson has exclusive control over the accounts and is able to move funds among entities at will.

39.     Investor funds pooled in Thunder Bay and the Jacobson-owned entities were used to meet the operating needs of other Investor LLCs; to pay other expenses of the Jacobson-owned Entities and the Jacobson family; and to pay returns to investors in other Investor LLCs.

40.     The Jacobson-owned Entities almost never contribute the 50% funding in the Investor LLCs as promised. At most Wendell Jacobson causes the Jacobson-owned Entity to deposit the specified percentage into the Investor LLC account, but then immediately that same day or thereabout transfers the amount back to the Jacobson-owned Entity. The balance sheet of the Investor LLC in question then simply reflects only a receivable owing by the Jacobson-owned Entity.

41.     For example, investors placed over $480,000 in an Investor LLC named River Royal, LLC ("River Royal") after receiving assurances from the Jacobsons that Council Properties, a Jacobson-owned Entity, would contribute $500,000 to satisfy the 50% requirement. In reality, Council Properties deposited $500,000 into the River Royal account on December 30, 2009, but the very same day Wendell Jacobson caused River Royal to wire the $500,000 right back to Council Properties. The balance sheet for River Royal contains only a line item for a note receivable from Council Properties. Council Properties has never paid the fictitious $500,000 note.

42.     Wendell Jacobson represents to investors that he has never lost money on a property. Through Caddis, MSI has represented to investors that its four *worst-performing* years still showed a positive average annual return of nearly 13%.

43.     In fact, Investor LLCs are experiencing significant net losses. Nevertheless, these Investor LLCs continue to pay returns to investors, falsely leading those investors to believe their LLCs are operating at a profit.

44.     For example, investors in four Investor LLCs (Dimazio, LLC; Alson, LLC; Goose Brook, LLC; and Autumn Hills, LLC) received 6% to 8% per year interest on their investments, paid monthly. Nevertheless, for the year ending December 31, 2010, the combined income from the four entities was only $33,210, and the combined expense was $1,286,110. Therefore, the four entities lost a total of $1,252,900 during 2010, making it impossible for the promised returns to be paid from the profits of the businesses. Instead, the returns were Ponzi payments derived from investors who had invested in other Investor LLCs.

45.     On numerous occasions since January 1, 2010 investors have been told that the property their Investor LLC owned has been sold, and that they have realized a profit on that sale. In fact, those properties were not sold. Rather, the Defendants used these alleged "sales" as a means of shifting investors into and out of certain properties, operating a shell game with the intent to raise additional funds from new and/or existing investors that were necessary to meet the rapidly growing financial obligations of the operation.

46.     For example, investors in Tennessee Park, LLC ("Tennessee Park") were told that the apartment complex owned by that LLC had been sold for $15 million in the summer of 2011. The Defendants had acquired the Tennessee Park property through a straw buyer in June 2010 for $2.7 million. Three weeks later, the Defendants "sold" the Tennessee Park property to the Tennessee Park Investor LLC in July 2010 – three weeks after the initial acquisition—for $7.2 million. The Tennessee Park investors were never informed that the Defendants owned the property

prior to the sale to Tennessee Park, or that the actual purchase price was nearly three times lower than the price represented.

47.     In announcing the fictitious sale of the Tennessee property for $15 million, the Defendants represented to the investors that they had realized a gain of 20.7%. In fact, the Tennessee Park property was never sold at all. Rather, the Defendants had simply obtained $15 million in financing on the project from Guggenheim Life and Annuity Company. A review of the property tax records indicate the Tennessee Park Apartments are still owned by Jacobson-owned Entities.

48.     Similar misrepresentations that properties had sold were made in a newsletter issued by MSI to investors, called "The Partner Post." For example, The Partner Post falsely stated that Jefferson Chase Apartments and Lake Ridge Apartments had been sold, but these properties are still owned by Investor LLCs.

49.     Investor returns, whether purportedly from the operations of properties or from a gain on their sale, are being paid from new investor funds.

50.     For example, in July 2010 the Defendants announced the fictitious sale of the King George/Parkview Place Apartments ("Parkview Place") property. Because the property had not actually been sold, let alone at the profit announced, the Defendants needed a source of funding to pay the promised returns.

51.     On August 18, 2010, the Defendants successfully brought into Tennessee Park a $2.4 million investment from a single investor, ostensibly to provide the investor with an interest in the underlying Tennessee Park properties. However, the very same day Wendell Jacobson caused the $2.4 million to be transferred from the Tennessee Park account to the Thunder Bay account. On August 19, 2010, the very next day, Wendell Jacobson caused Thunder Bay to wire

$1,665,000 into the Parkview Place account, which was then used to pay $1,646,483 in returns to investors from a fictitious sale of the Parkview Place property.

52.     Without the infusion of cash from Thunder Bay, Parkview Place would not have had sufficient funds to pay the returns. Likewise, without the infusion of cash from Tennessee Park, Thunder Bay would not have had sufficient funds to transfer to Parkview Place.

53.     In this way funds from new investors in Tennessee Park were used to pay returns to investors in Parkview Place, as is typical of a Ponzi scheme.

54.     Taken as a whole, MSI's operation is insolvent. Thunder Bay is the clearinghouse into which almost all investor funds flow. From Thunder Bay, these funds are directed to various operational expenses and used to pay investor returns.

55.     Thunder Bay is insolvent and unable to pay its bills as they fall due. As of December 31, 2010, Thunder Bay owed investors and Investor LLCs more than $103 million. As of the same period, Thunder Bay showed a net loss of over $2.2 million. Having no actual operations, Thunder Bay relied almost entirely on new investor funds as its source of funding. Without these new investor funds, Thunder Bay would immediately cease to operate.

56.     The Thunder Bay Chase bank account for the period July 1, 2011 to July 31, 2011 shows more than $46 million in transactions, with a beginning and ending balance, respectively, of $300,954 and $195,575. Virtually all of the transactions were between and among Jacobson-owned Entities and Investor LLCs.

57.     Defendants knew, or were reckless in not knowing, that investor funds were not being directed to their Investor LLC but were being pooled in Thunder Bay; that a Jacobson-owned Entity had not contributed a 50% ownership interest to each Investor LLC; that the Investor LLCs were not profitable; that the entire operation was insolvent; that other

11

misrepresentations were being made concerning the sale of various properties; and that investor funds were being used to pay returns to earlier investors.

58.    Defendants' misrepresentations and omissions were material.  Had the investors known of these serious misrepresentations, and the true nature of the operation run by the Defendants, the investors likely would not have invested in the operation.

## ONGOING SOLICITATIONS AND THE RESCISSION OFFERS

59.    On November 2, 2011, a new investor invested $2 million in an Investor LLC. His primary contacts in making this investment were Wendell and Allen Jacobson.  To solicit and secure the investment, the Jacobsons made the same false representations to this investor that had been made and repeated to other investors.

60.    Allen Jacobson continues to actively solicit new investor funds through Caddis.

61.    In late November 2011, counsel for the Defendants informed the Commission that rescission offers were being made to members of Investor LLCs.  Counsel provided six of these "Repurchase Memoranda" to the Commission.  In early December 2011, counsel confirmed that these Repurchase Memoranda had been signed by Wendell Jacobson and sent to investors. Counsel further informed the Commission that the Defendants intended to make similar rescission offers, signed and executed by Wendell Jacobson, to members of all the Investor LLCs.  He stated that these rescission offers are currently going out to investors on a rolling basis, and investor responses are already being received.

62.    The six Repurchase Memoranda that have been provided to the Commission to date in themselves are not registered with the Commission and constitute fraudulent offers, because they misrepresent, or fail to disclose, material facts to investors.

63.     For example, the memorandum for the Tennessee Park LLC states that the reason

for the rescission offer is a possible ministerial failure to register the offering under the Securities

Act, when the Defendants' counsel has received a copy of the Formal Order of Investigation and

knows or should know that it references a fraud investigation; the memorandum represents that

the Tennessee Park property was sold and thereby generated a 20.7% return to investors, when

no sale of the property actually took place; and the memorandum does not disclose that MSI is

insolvent and operating a Ponzi scheme.

### FIRST CAUSE OF ACTION
### EMPLOYMENT OF A DEVICE, SCHEME OR ARTIFICE TO DEFRAUD
#### Violation of Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)]

64.     The Commission realleges and incorporates by reference the allegations contained

in Paragraphs 1 though 63, above.

65.     Defendants, and each of them, by engaging in conduct described above, directly

or indirectly, in the offer or sale of securities, by the use of the means or instruments of

transportation or communication in interstate commerce or by use of the mails, with scienter,

employed devices, schemes, or artifices to defraud.

66.     By reason of the foregoing, Defendants, and each of them, directly or indirectly,

violated, and unless restrained and enjoined by this Court, will continue to violate, Section

17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

### SECOND CAUSE OF ACTION
### FRAUD IN THE OFFER AND SALE OF SECURITIES
#### Violations of Section 17(a)(2) and (3) of the Securities Act
#### [15 U.S.C. § 77q(a)(2) and (3)]

67.     The Commission realleges and incorporates by reference the allegations contained

in Paragraphs 1 though 63, above.

13

68.     Defendants, and each of them, by engaging in the conduct described above, directly and indirectly, in the offer and sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, obtained money or property by means of untrue statements of material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and engaged in transactions, practices, or courses of business which operate or would operate as a fraud or deceit upon the purchaser.

69.     By reason of the foregoing, Defendants, and each of them, directly or indirectly, violated, and unless restrained and enjoined will continue to violate, Section 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

### THIRD CAUSE OF ACTION
### FRAUD IN CONNECTION WITH THE PURCHASE AND
### SALE OF SECURITIES
### Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]

70.     The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 though 63, above.

71.     Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, by the use of means or instrumentalities of interstate commerce or use of the mails, in connection with the purchase or sale of securities, with scienter, (1) employed devices, schemes, or artifices to defraud; (2) made untrue statements of material fact or omitted to state a material fact necessary in order to make statements made, in light of the circumstances under which they were made not misleading; or (3) engaged in acts, practices, or courses of business that operated or would operate as a fraud and deceit upon other persons.

14

72.     By reason of the foregoing, Defendants, and each of them, violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## FOURTH CAUSE OF ACTION
### OFFER AND SALE OF UNREGISTERED SECURITIES
**Violation of Sections 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) and (c)]**

73.     The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 though 63, above.

74.     Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, through use of the means or instruments of transportation or communication in interstate commerce or the mails, offered to sell or sold securities or, directly or indirectly, or carried such securities through the mails or in interstate commerce, for the purpose of sale or delivery after sale.

75.     No registration statement has been filed with the Commission or has been in effect with respect to these securities.

76.     By reason of the foregoing, Defendants, directly or indirectly violated, and unless enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## FIFTH CAUSE OF ACTION
### OFFER AND SALE OF SECURITIES BY AN
### UNREGISTERED BROKER OR DEALER
**Violation of Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)]**

77.     The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 though 63, above.

78.     Defendants Wendell Jacobson and Allen Jacobson, directly or indirectly, made use of the mails or the means or instrumentalities of interstate commerce to effect transactions in,

or to induce or attempt to induce the purchase and sale of, securities without being registered as a broker or dealer with the Commission or associated with a broker-dealer registered with the Commission.

79.     By reason of the foregoing, Defendants Wendell Jacobson and Allen Jacobson violated, and unless restrained and enjoined will continue to violate, Section 15(a) of the Exchange Act [15 U.S.C. 78o(a)].

### RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court:

### I

Issue findings of fact and conclusions of law that Defendants committed the violations charged herein.

### II

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that temporarily, preliminarily and permanently enjoin Wendell Jacobson and Allen Jacobson and their officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from engaging in transactions, acts, practices, and courses of business described herein, and from engaging in conduct of similar purport and object in violation of Sections 5(a), 5(c) and 17(a) of the Securities Act, and Sections 10(b) and 15(a) of the Exchange Act and Rule 10b-5 thereunder.

### III

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that temporarily, preliminarily and permanently enjoin MSI and its officers, agents, servants,

16

employees, attorneys, and accountants, and those persons in active concert or participation with

any of them, who receive actual notice of the order by personal service or otherwise, and each of

them, from engaging in transactions, acts, practices, and courses of business described herein,

and from engaging in conduct of similar purport and object in violation of Sections 5(a), 5(c) and

17(a) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

## IV

Issue, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure,

orders that temporarily, preliminarily and permanently enjoin Defendants, and their officers,

agents, servants, employees, attorneys, and accountants, and those persons in active concert or

participation with any of them, who receive actual notice of the order by personal service or

otherwise, and each of them, from:  (A) transferring, changing, wasting, dissipating, converting,

concealing, or otherwise disposing of, in any manner, any funds, assets, claims, or other property

or assets owned or controlled by, or in the possession or custody of these Defendants; and (B)

transferring, assigning, selling, hypothecating, or otherwise disposing of any assets of MSI or

related entities, including but not limited to those entities identified in accompanying pleadings.

## V

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders

that temporarily, preliminarily and permanently restrain and enjoin Defendants, and each of

them, and their officers, agents, servants, employees, attorneys, and accountants, and those

persons in active concert or participation with any of them, who receive actual notice of the order

by personal service or otherwise, and each of them, from destroying, mutilating, concealing,

transferring, altering, or otherwise disposing of, in any manner, books, records, computer

programs, computer files, computer printouts, correspondence, including e-mail, whether stored

electronically or in hard copy, memoranda, brochures, or any other documents of any kind that pertain in any manner to the business of Defendants.

## VI

Enter an order directing Defendants, and each of them, to pay civil money penalties pursuant to Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act.

## VII

Enter an order directing Defendants to disgorge all ill-gotten gains received during the period of violative conduct and pay prejudgment interest on such ill-gotten gains.

## VIII

Grant such further equitable relief as this Court deems just, appropriate, and necessary, including, but not limited to, a freeze of assets, appointment of a receiver for MSI and related entities and the acceleration of discovery, including the forthwith production of documents.

## IX

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

Dated December 15, 2011.

Respectfully submitted,

Daniel Wadley (Utah State Bar No. 10358)
WadleyD@sec.gov
Thomas M. Melton (Utah Bar No. 4999)
meltont@sec.gov
Attorneys for Plaintiff
Securities and Exchange Commission
15 West South Temple, Suite 1800
Salt Lake City, Utah 84101
Tel.  801-524-5796

19